UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PAMELA A. BAUGHER,

    Plaintiff,

v.

CITY OF ELLENSBURG, WA,
THE BROADWAY GROUP,

    Defendants.

NO. CV-06-3026-RHW

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motions for Summary Judgment (Ct. Recs. 25, 30). A hearing was held on the motions on February 20, 2007, in Yakima, Washington. Plaintiff participated *pro se* telephonically; Defendant City of Ellensburg was represented by Charles Zimmerman; Defendant The Broadway Group was represented by Raymond Schutts.

### BACKGROUND

The following facts are viewed in the light most favorable to Plaintiff, the non-moving party.

Plaintiff routinely travels with her dog "Bun." Bun accompanies Plaintiff to assist her with alertness to the need for medication and alertness to surroundings. Plaintiff suffers from autism, panic attacks, a head injury, asthma and has hearing problems.

On June 17, 2005, Plaintiff was traveling with Bun from Seattle, Washington to Sunnyside, Washington on I-90, when she decided to stop at the

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Flying J convenience store in Ellensburg, Washington. She entered the store with Bun in tow. As she neared the open deli case, a store clerk approached her, expressed concern that Bun was near the food, and asked if she could help Plaintiff retrieve any food items. She also asked Plaintiff to keep Bun away from the food.

Plaintiff told the store clerk that Bun was a service animal, and therefore, could remain in the store. Plaintiff informed the store personnel that the Americans with Disabilities Act (ADA) and the Washington Law Against Discrimination required access for medical service dogs. The store clerk and the store manager denied this right, asserting that company policy and health regulations prevented Bun from being near the deli case. Plaintiff asked that the police be called to enforce the Washington criminal statutes that make it a crime to deny access because of the use of a service dog and to separate a service dog from a user.

Plaintiff was asked to leave the store by the store manager. She refused. Eventually, the police were called. When they arrived, Plaintiff, the manager, and the police stepped outside the store. The police asked Plaintiff for her name and identification, which she refused to give. The police notified her that they were investigating her for criminal trespass. Plaintiff became angry and started to walk away. The police asked her to stay and she refused. Ultimately, two police officers grabbed Plaintiff and handcuffed her. One of the police officers removed Bun from Plaintiff's grasp. Once she was handcuffed, Plaintiff fell to the ground and started crying for help. She complained of chest pains, and she expressed concern that Bun was going to die, due to the heat. An ambulance was called to the scene, and Plaintiff was transported to the emergency room. One of the officers retrieved Plaintiff's medication from her purse, which was in the front seat of the car. While in the ambulance, Plaintiff refused all medical assistance, but continued to complain of chest pains. At the emergency room, she continued to

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 2**

refuse all medical assistance. Eventually, she was released from the ER, and was brought by the police to the Animal Shelter to retrieve Bun[1], and then was returned to the car.

As a result of this incident, Plaintiff is seeking two million dollars in damages.

## DISCUSSION

Plaintiff is proceeding *pro se*; thus, the Court will liberally construe her pleadings. *Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir. 1996). It appears that Plaintiff is making the following claims: (1) violation of the Americans with Disabilities Act (ADA); (2) violation of the Washington Law Against Discrimination, Wash, Rev. Code § 49.60; (3) violation of Wash. Rev. Code §§ 9.91.170 and 70.84.070; (4) violation of 28 C.F.R. § 35.134; and (5) section 1983 claim based on unreasonable search and seizure. Plaintiff's complaint does not differentiate between the claims asserted against the two Defendants. The Court construes Plaintiff's complaint as asserting the five claims against both Defendants.

**I.    Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby,*

---

[1]After being taken from Plaintiff, Bun as placed in a patrol car. The officer who placed Bun in the car testified that he made sure that Bun was in the shade, the windows were rolled down and the air conditioning was running. Bun was then transported to the nearest animal shelter.

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 3**

*Inc.*, 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**II.    The Broadway Group's Motion for Summary Judgment**

Defendant The Broadway Group argues that summary judgment is appropriate for all of Plaintiff's claims asserted against it.

**(1)    Americans with Disabilities (ADA) Claim**

Plaintiff is relying, in part, on the Americans with Disabilities Act in support of her claim for damages. Pursuant to Title III of the ADA, private entities, such as gas stations and establishments that sell food, cannot discriminate against individuals based on their disability. 42 U.S.C. § 12182(a). Monetary damages, however, are not recoverable under Title III of the ADA–only injunctive relief. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). Here, Plaintiff's complaint is clear. She is seeking only monetary damages. Thus, summary judgment in favor of Defendant The Broadway Group with regard to Plaintiff's ADA claim is

1  appropriate.

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 5**

**(2) 28 C.F.R. § 35.134**

Plaintiff cites to 28 C.F.R. § 35.134 in support of her claim against Defendants. 28 C.F.R. § 35.134 prohibits retaliation or coercion on the part of state and local government services, which is part of Title II of the ADA. Specifically, it provides:

> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. § 35.134.

To the extent that the ADA applies to private entities, it is through Title III of the ADA. Thus, this C.F.R. section does not apply to Defendant The Broadway Group in this context.

Part 36 of Title 28 of the CFR, however, covers Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities. Part 36 contains a similar provision that prohibits retaliation and coercion in public accommodations and in commercial facilities.

28 C.F.R. § 36.206 provides:

> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.
> ©) Illustrations of conduct prohibited by this section include, but are not limited to:
> (1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;
> (2) Threatening, intimidating, or interfering with an individual

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 6**

> with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;
> (3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or
> (4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

28 C.F.R. § 36.206.

This regulation is based on 42 U.S.C. § 12203(b), which provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).

Even if the Court were to liberally construe Plaintiff's complaint to allow her to state a claim under 42 U.S.C. § 12203(b) and 28 C.F.R. § 36.206, Plaintiff's retaliation claim does not survive because compensatory and punitive damages are not available for retaliation claims under the ADA. *See Kramer v. Banc of America Securities*, *L.L.C.*, 355 F.3d 961, 965 (7th Cir. 2004).

**(3)     Section 1983 Claim Based on the Fourth Amendment**

Section 1983 creates a cause of action against any person who, acting under color of state law, violates the constitutional rights of another person. 42 U.S.C. § 1983; *Mabe v. San Bernardino County, Dep't of Public Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001). To succeed on a section 1983 claim, Plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived her of a constitutional right. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Here, there is nothing in the record that would support a finding that the employees of The Broadway Group were acting under color of state law. Thus, to the extent Plaintiff is asserting a section 1983 claim against Defendant The Broadway Group, summary judgment is appropriate.

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 7**

**(4)  Remaining State Law Claims**

Plaintiff alleges a number of state claims. Because the Court has granted summary judgment with respect to all federal claims, the Court declines to extend supplemental jurisdiction to the remaining state claims. *See* 28 U.S.C. § 1367©); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

### III.  Defendant City of Ellensburg

**(1)  Americans with Disabilities Claim (ADA)**

Title II of the ADA applies to any state or local government. 42 U.S.C. § 12131. Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a); *see United States v. Georgia*, 126 S.Ct. 877, 879 (2006). Plaintiff cannot bring an ADA claim against the police officers in their individual capacity under Title II. *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999).

In order to state a claim of disability discrimination under Title II, Plaintiff must allege four elements: (1) she is an individual with a disability; (2) she was otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of her disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 8**

The Court liberally construes Plaintiff's complaint as bringing two claims under Title II: (1) the City of Ellensburg violated the ADA when it failed to enforce her right to bring a service dog into a public accommodation; and (2) the City of Ellensburg violated the ADA when its police officers arrested her on account of her disability.

Defendant City of Ellensburg does not dispute that Plaintiff may have a qualifying disability; rather, it argues that Plaintiff cannot establish a violation of the ADA because Bun does not qualify as a service animal, and because she was not discriminated against because she was disabled.

Pursuant to the ADA, a service animal is defined as:

> Service animal means any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

28 C.F.R § 36.104.

In support of their argument, Defendants rely on Washington case law, and a federal district court case, *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245 (D. Haw. 2003). In that case, the district court held that there must be some evidence of individual training to set the service animal apart from the ordinary pet. *Id.* at 1256. Although the Ninth Circuit affirmed the granting of summary judgment in that case, it specifically declined to rule on whether the plaintiffs must prove that the dog is an individually trained service animal. *See DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 n.2 (9th Cir. 2006) ([W]e need not and do not reach other issues addressed by the district court, including whether the plaintiffs must prove that [the dog] "is an individually trained service animal."). Moreover, in *Lentini v. California Center for the Arts, Escondido*, the Circuit concluded, without comment, that a small, black Shih Tzu/Poodle mix named Jazz, was a service

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 9**

animal that provided minimal protection and retrieved small dropped items for a quadriplegic, who used a wheelchair for mobility. 370 F.3d 837, 839 (9th Cir. 2004).

Defendants argue that personal training coupled with evidence of outside obedience training and actual observation of the animal exhibiting the learned behavior is required in order to qualify the animal as a service animal. The Court agrees that there must be some evidence to set a service animal apart from an ordinary pet, but disagrees that there must be documented evidence of individual training. In this case, the issue with regard to whether Bun is considered a "service animal" does not necessarily turn on documented evidence, but whether Bun was trained *to do work or perform tasks* for the benefit of an individual with a disability. Plaintiff asserts that the presence of Bun assisted her in her daily life. However, the record is devoid of any specific work or tasks that Bun was trained to perform for the benefit of Plaintiff, other than to be a presence that would remind Plaintiff to take her medication, or to stay focused.[2] Plaintiff asserts that Bun cued her to take her medicine. Plaintiff does not explain the specific cue that Bun was trained to provide when the need to take her medicine arose, nor is there anything in the record that explains the cues that Bun was trained to provide to Plaintiff to

---

[2] In opposition to Defendants' motions, Plaintiff submitted a letter from Dr. Janet Arnold, dated March 30, 2004. In the letter, Dr. Arnold states that Plaintiff is her patient, and Plaintiff uses a medical service dog "Bun." Dr. Arnold wrote that she has witnessed that Bun "cues" Plaintiff to take her prescribed medications for her asthma, emphysema and panic attack disorders. Pursuant to Fed. R. Civ. P. 56(e), supporting affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence. Dr. Arnold's letter is not admissible because it is hearsay. Moreover, Dr. Arnold's letter does not address how Bun was trained to provide these cues.

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 10**

keep her focused. Nor does Plaintiff explain how Bun was trained to provide these cues. The Court does not doubt that Bun provided Plaintiff with a sense of security and comfort and helped her cope with her disability, but this does not meet the statutory definition of a service animal, as defined by the ADA. The Court reads the regulation as requiring something more than merely being a presence that provides comfort, companionship, or interaction with an individual. The regulation is clear. The service dog must be trained to perform specific tasks or work and there is nothing in the record to suggest that Bun was trained to perform specific *tasks or work* for the benefit of Plaintiff. Plaintiff has not presented any admissible evidence that sets Bun apart from the ordinary pet.

Accordingly, Plaintiff has failed to show that Bun is a service dog as defined by the ADA. As such, the City of Ellensburg did not violate the ADA by failing to enforce her right to bring a service dog into a public entity because Bun was not a service animal as defined by the ADA. Additionally, the City of Ellensburg did not violate the ADA because its police officers did not arrested her on account of her disability, because she was not entitled to have Bun in the Flying J.

(**2**)    **28 C.F.R. § 35.134**

To the extent Plaintiff is asserting a retaliation claim against Defendant City of Ellensburg, her claim does not survive because compensatory and punitive damages are not available for retaliation claims under the ADA. *Kramer*, 355 F.3d at 965.

**(3)    Section 1983 Claims Based on the Fourth Amendment**

Plaintiff is bringing her section 1983 claim against the City of Ellensburg only, and not against the individual officers. A municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 691 (1978). Plaintiff has not presented any evidence of any official government policy or custom that authorizes unlawful searches and arrests. *See Hart v. Parks*, 450

**ORDER GRANTING THE BROADWAY GROUP'S  MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 11**

F.3d 1059, 1071 (9th Cir. 2006) (holding that dismissal of *Monell* claims were proper where police had probable cause to arrest and where plaintiff failed to provide any evidence showing that the police department had a policy or custom allowing unconstitutional arrests). Thus, summary judgment with respect to her section 1983 claim against the City of Ellensburg is appropriate.

### (4) Remaining State Claims

For the reasons stated above, the Court declines to exercise supplemental jurisdiction over the remaining state claims.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant The Broadway Group's Motion for Summary Judgment (Ct. Rec. 25) is **GRANTED**.

2. Defendant City of Ellensburg's Motion for Summary Judgment (Ct. Rec. 30) is **GRANTED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to Plaintiff and counsel, and close the file.

**DATED** this 19th day of March, 2007.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Baugher\sj.ord2.wpd

**ORDER GRANTING THE BROADWAY GROUP'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE CITY OF ELLENSBURG'S MOTION FOR SUMMARY JUDGMENT ~ 12**